**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **CHRISTOPHER NECAISE** | **PLAINTIFF** |
| **v.** | **CAUSE NO. 1:22-cv-100-LG-RPM** |
| **ASHLEY MERRYMAN MAY, et al.** | **DEFENDANTS** |

*consolidated with*

| | |
|---|---|
| **CHRISTOPHER NECAISE** | **PLAINTIFF** |
| **v.** | **CAUSE NO. 3:22-cv-213-LG-RPM** |
| **MISSISSIPPI DEPARTMENT OF REVENUE, et al.** | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS CERTAIN CLAIMS ON IMMUNITY GROUNDS, GRANTING IN PART DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS, AND DISMISSING CASE**

**BEFORE THE COURT** are two nearly identical [57] [60] Motions to Dismiss Certain Claims on Immunity Grounds and Motion for Partial Judgment on the Pleadings filed by both sets of Defendants in this matter. These Motions are fully briefed. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that Defendants' Motions should be granted to the extent that the federal causes of action are dismissed under the doctrines of sovereign immunity and qualified immunity. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and hereby dismisses them without prejudice.

## BACKGROUND

Plaintiff filed this lawsuit on December 1, 2021, in the Circuit Court of Harrison County, Mississippi.  (Compl., ECF No. 1-1).  Plaintiff claims that he worked as a staff attorney at the Mississippi Department of Revenue (MDOR) in Clinton, Mississippi.  (*Id.* ¶ VIII).  The Individual Defendants—Christopher Graham, Jan Craig, Meg Bartlett, Ashley Merryman May, David Caldwell, and Bridgette Thomas—were all employed in various positions at the Mississippi Department of Revenue during Plaintiff's employment.  (*Id.*).

Plaintiff alleges that he "was a good employee that had a satisfactory work product," litigating various tax disputes, injunctions, subpoenas, foreclosures, and public records requests.  (*Id.* ¶¶ VIII-IX).  In November 2020, Plaintiff refused to disclose confidential taxpayer information to a party seeking the information by subpoena, pursuant to Plaintiff's reading of statutory law.  (*Id.* ¶¶ X-XI).  This conflicted with the opinions of his superiors, who indicated to Plaintiff that the information should be produced.  (*Id.*).  Plaintiff shared his legal research with his superiors and his conclusion that releasing such information violated statute; Defendant May thereafter allegedly threatened to fire him if he did not comply with the subpoena.  (*Id.* ¶ XII).

In the following email exchange, Defendants May, Caldwell, and Thomas sparred with Plaintiff on his interpretation of the relevant legal authority.  (*Id.* ¶ XIII).  During this time, Plaintiff alleges, Defendants May, Thomas and Graham discussed the possibility of terminating him.  (*Id.* ¶¶ XIV-XVI).  Plaintiff claims that

Defendants Bartlett and Craig also engaged in "collusion" with Defendant May to release the disputed information and discuss his termination. (*Id.* ¶¶ XVII-XVIII). On December 1, 2020, Defendant May terminated Plaintiff after the weekly attorneys' meeting with a termination notice signed by Defendant Graham. (*Id.* ¶¶ XIX-XX). Plaintiff alleges that he was not given a reason for his termination, and later correspondence proved futile. (*Id.* ¶¶ XXI-XXII).

On December 1, 2021, Plaintiff brought this lawsuit against the named Defendants, claiming violations of his federal and state rights to free speech and due process, as well as state law claims for tortious interference with contract and employment, and a claim under *McArn v. Allied Bruce-Terminix Co, Inc.*, 626 So. 2d 603 (Miss. 1993). (*Id.* ¶¶ XXIII-XXVII). On March 3, 2022, Plaintiff filed another lawsuit in the Circuit Court of Hinds County, Mississippi, adding the Mississippi Department of Revenue (MDOR), the State of Mississippi and Lamar Wilson as Defendants, containing largely similar allegations. The cases have since been consolidated. *See Necaise v. May*, No. 1:22CV100-LG-RPM, 3:22CV213-LG-RPM, at *1-2 (S.D. Miss. Jan. 24, 2023).

On April 22, 2022, Defendants removed the case to federal court, citing the Court's federal question and supplemental jurisdiction under 28 U.S.C. § 1331, 1441(c), and 1367(a) in connection with Plaintiff's free speech and due process claims. (*See* Not. Removal ¶ 2, ECF No. 1). Defendants later filed [12] [14] Amended Answers which set forth an Eleventh Amendment immunity defense as follows:

> Defendants plead that they are immune from liability under the
> Eleventh Amendment to the United States Constitution, and by the
> Mississippi Tort Claims Act and sovereign immunity.  The Defendants
> are entitled to and hereby affirmatively plead their sovereign
> immunity defenses to suit and liability in this cause pursuant to and
> inclusive of the provisions of Miss. Code Ann. §11-46-1, et seq., as
> annotated and amended.

(Am. Answer & Defenses ¶ 5, ECF Nos. 12, 14).[1]

On March 1, 2023, Defendants filed almost identical [57] [60] Motions to

Dismiss and for Judgment on the Pleadings, seeking dismissal of Plaintiff's claims

for lack of subject-matter jurisdiction or due to their legal insufficiency under Rule

12(c).  On March 23, 2023, Plaintiff [65] [67] responded to both Motions, to which

Defendants later [72] [73] replied.  The issues are now fully briefed and ready for

disposition by the Court.

## DISCUSSION

### I.  Legal Standards

Defendants' Motions contain both a Motion to Dismiss for Lack of

Jurisdiction under Rule 12(b)(1) and a Motion for Judgment on the Pleadings under

---

[1] Originally, Defendants pled that they are "immune *from suit* under the Eleventh
Amendment." (Answer & Defenses ¶ 5, ECF Nos. 4, 6) (emphasis added).  Plaintiff
[11] moved to strike the defense, arguing that Defendants had waived immunity by
consenting to removal to federal court.  Defendants then amended the defense to its
current form, pleading "immunity *from liability*." (Am. Answer & Defenses ¶ 5,
ECF Nos. 12, 14) (emphasis added).  Unsatisfied by the amendment, Plaintiff
argued that this rewording did not affect the legal issue he raised.  (*See generally*
Mem. Br. Supp. Mot. Strike, ECF No. 22).  However, the Court noted the Fifth
Circuit's holding that "'a state may waive its immunity from suit through removal
and simultaneously retain its immunity from liability.'"  *Necaise v. May*, No.
1:22CV100-LG-RPM, 2023 WL 378751, at *4 (S.D. Miss. Jan. 24, 2023) (quoting
*Zeng v. Tex. Tech Univ. Health Sci. Ctr. at El Paso*, 836 F. App'x 203, 207 (5th Cir.
2020)).  The Court denied Plaintiff's attempt to strike the defense but did not decide
the merits of any such immunities.  *Necaise*, 2023 WL 378751, at *4, n. 3.

Rule 12(c). Rule 12(b)(1) motions should be granted "when the court lacks the statutory or constitutional power to adjudicate the case." *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "When ruling on the motion, the district court may rely on the complaint, undisputed facts in the record, and the court's resolution of disputed facts." *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017), *cert. denied,* 138 S. Ct. 203 (2017) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). The burden of proof rests on the party asserting the existence of jurisdiction. *Id.* (citing *Ramming*, 284 F.3d at 161); *see also Kokkenen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

"A Motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a Rule 12(c) Motion, the Court accepts all well pleaded facts as true and views them in the light most favorable to Plaintiff. *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018). But

"the complaint must allege more than labels and conclusions, a formulaic recitation of the elements of a cause of action will not do, and factual allegations must be enough to raise a right to relief above the speculative level." *Jabaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## II. Federal Claims

### A. State Defendants

In their Rule 12(b)(1) Motions to Dismiss for Lack of Jurisdiction, Defendants State of Mississippi, Mississippi Department of Revenue (MDOR), and the Individual Defendants in their official capacity (the "State Defendants") challenge Plaintiff's constitutional claims with the sovereign immunity defense contained in their amended pleadings. This defense alleges that Defendants are "immune from liability under the Eleventh Amendment to the United States Constitution, and by the Mississippi Tort Claims Act and sovereign immunity." (Am. Answer & Defenses ¶ 5, ECF Nos. 12, 14).

As an initial matter, sovereign immunity issues are "appropriately brought under Rule 12(b)(1)." *Valadez v. City of San Antonio*, No. SA-21CV2-JKP-RBF, 2022 WL 1608016, at *8 (W.D. Tex. May 20, 2022) (citing *Alvarado v. Tex. Health & Hum. Servs. Comm'n*, No. 5:19CV106-JKP, 2019 WL 6876499, at *2 (W.D. Tex. Dec. 17, 2019)); *see also Patel v. United States Dept. of Agriculture*, No. 3:17CV59-HSO-

JCG, 2017 WL 11697929, at *2 (S.D. Miss. Sep. 1, 2017) ("The State Defendants'
argument that Plaintiffs' claims against them should be dismissed on Eleventh
Amendment sovereign immunity grounds is a challenge to the Court's subject-
matter jurisdiction that is evaluated under Federal Rule of Civil Procedure
12(b)(1).").

"'Sovereign immunity is the privilege of the sovereign not to be sued without
its consent.'" *Kermode v. Univ. Miss. Med. Ctr.*, 496 F. App'x 483, 485 (5th Cir.
2012) (quoting *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011)).
"The Eleventh Amendment codified the sovereign immunity of the several states."
*Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir.
2014) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997)).
Therefore, "[f]ederal courts are without jurisdiction over suits against a state, a
state agency, or a state official in his official capacity unless that state has waived
its sovereign immunity or Congress has clearly abrogated it." *Moore*, 743 F.3d at
963 (citation omitted); *accord Kermode*, 496 F. App'x at 485 ("Despite this principle
of sovereign immunity, a state may still be subject to suit in federal court if it
'consents to suit or if Congress has clearly and validly abrogated the state's
sovereign immunity.'") (quoting *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318,
326 (5th Cir. 2002)).

"Sovereign immunity extends to agencies of the state government and 'alter
egos' or 'arms of the state.'" *Kermode*, 496 F. App'x at 487; *Black v. N. Panola Sch.
Dist.*, 461 F.3d 584, 595-96 (5th Cir. Aug. 18, 2006) (holding that only "arms of the

state," not "lesser governmental entities such as counties and municipalities," may invoke Eleventh Amendment immunity). "This circuit uses a six-factor test to guide this inquiry," viz. whether a given entity is an arm of the state. *Perez*, 320 F.3d at 326. The listed factors are:

> (1) whether state statutes and case law view the entity as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.

*Id.* at 326-27. "No one factor is dispositive, though we have deemed the source of an entity's funding a particularly important factor because a principal goal of the Eleventh Amendment is to protect state treasuries." *Id.* at 327 (citing *Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999)). "An entity need not show that all of the factors are satisfied; the factors simply provide guidelines for courts to balance the equities and determine if the suit is really one against the state itself." *Perez*, 307 F.3d at 327.

Here, it is clear to the Court that the Mississippi Department of Revenue (MDOR) is an "arm of the state" within the meaning of sovereign immunity doctrine. MDOR is created by state statute. *See* Miss. Code Ann. §§ 27-3-1 *et seq.*; *see also In re Fugitt*, 539 B.R. 289, 293 (Bankr. S.D. Miss. 2014). Case law describes MDOR's predecessor, the Mississippi State Tax Commission, as "an administrative agency of the State of Mississippi," *Lamar Outdoor Advertising, Inc. v. Miss. State Tax Comm'n*, 539 F. Supp. 817, 818 n. 2 (S.D. Miss. 1982), *rev'd on other grounds*, 701 F.2d 314 (5th Cir. 1983), and a "department of state government . . ." *City of*

*Belmont v. Miss. State Tax Comm'n*, 860 So. 2d 289, 292 (Miss. 2003).  Further,

MDOR is concerned with statewide, supralocal, activities.  *See* Miss. Code Ann. §

27-3-31 (describing its duties and responsibilities).  The Fifth Circuit, considering a

procedural due process claim under § 1983 against the Mississippi State Tax

Commission (MSTC), found that sovereign immunity principles barred a claim for

monetary damages and an injunction against MSTC.  *See Chiz's Motel &*

*Restaurant v. Miss. State Tax Comm'n*, 750 F.2d 1305, 1307-08 (5th Cir. 1985).

Hence, the Court concludes that MDOR, as the successor of MSTC, enjoys similar

sovereign immunity as an "arm of the state" of Mississippi.

Moreover, "suits against state officers in their official capacities, rather than

their personal capacities, are treated as suits against the state entity itself."

*Kermode*, 496 F. App'x at 488 (citing *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*,

662 F.3d 336, 340 (5th Cir. 2011)).  In other words, "a suit against a state official in

his or her official capacity is not a suit against the official but rather is a suit

against the official's office. . .. As such, it is no different from a suit against the

State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (citation

omitted).  Therefore, to the extent that the Individual Defendants have been sued in

their official capacities, they may also claim sovereign immunity under the

Eleventh Amendment.

To circumvent these conclusions, Plaintiff argues that Defendants waived

their sovereign immunity by removing the case to federal court.  As noted in the

Court's previous decision, *Necaise v. May*, No. 1:22CV100-LG-RPM, 2023 WL

378751, at *4 (S.D. Miss. Jan. 24, 2023), Defendants did in fact waive immunity from suit by electing to remove to this Court.  However, although Plaintiff insists otherwise, the Fifth Circuit has observed that "the Constitution permits and protects a state's right to relinquish its immunity from suit while retaining its immunity from liability, or vice versa, but that it does not require a state to do so." *Meyers*, 410 F.3d at 255.  "[T]he Constitution permits a state whose law provides that it possesses an immunity from liability separate from its immunity from suit to show that its waiver of one does not affect its enjoyment of the other."  *Id.* at 253. In other words, "a state may waive its immunity from suit through removal and simultaneously retain its immunity from liability." *Zeng*, 836 F. App'x at 207.  Such immunity from liability "is an issue that must be decided according to that state's law."  *Meyers*, 410 F.3d at 255.  Therefore, while Defendants may have waived their right to raise the immunity from suit defense, they did not necessarily thereby lose the right to raise the immunity from liability defense.  *See Delaney v. Miss. Dept. of Public Safety*, No. 3:12CV229-TSL-MTP, 2013 WL 286365, at *3 (S.D. Miss. Jan. 24, 2013), *aff'd*, 554 F. App'x 279 (5th Cir. 2014); *Dansby-Giles v. Jackson State Univ.*, No. 3:07CV452-HTW-LRA, 3:07CV597-HTW-LRA, 2010 WL 780531, at *4 (S.D. Miss. Feb. 28, 2010).

Plaintiff next argues that, for various reasons, sovereign immunity is "pierced" in this case due to the presence of state and federal constitutional issues. The Court notes that immunity from liability "must be decided according to [Mississippi] law." *Meyers*, 410 F.3d at 255.  The question, therefore, is whether

Mississippi law retains or disclaims its sovereign immunity from liability with respect to the federal and state constitutional claims at issue.  *See Dansby-Giles*, 2010 WL 780531, at *4 ("Jackson's immunity from liability rests upon whether Mississippi has put forth an unequivocal waiver of its immunity with regards to" the federal claims at issue).

"[T]he State of Mississippi has not waived its sovereign immunity from liability in suits arising under §§ 1983, 1985, or 1986." *Delaney*, 2013 WL 286365, at *3; *see also Gazzo v. Miss. Dept. of Public Safety*, No. 1:09CV719-LG-RHW, 2011 WL 1841258, at *2 (S.D. Miss. May 13, 2011) ("42 U.S.C. § 1983 'does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties,' unless the state waives its immunity.").  "On the contrary, the Mississippi Tort Claims Act (MTCA), the State's only explicit waiver of sovereign immunity, expressly preserves the State's Eleventh Amendment immunity." *Delaney*, 2013 WL 286365, at *3 (citing Miss. Code Ann. § 11-46-3(1) (providing that "the 'state' and its 'political subdivisions,' . . . are not now, have never been and shall not be liable, and are, always have been and shall continue to be immune from suit at law or in equity")); *see also* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").[2]

---

[2] The Court acknowledges that the Fifth Circuit has also said that "the MTCA fails to insulate the state and its subdivisions from liability for violations of constitutional rights."  *Black v. Panola School Dist.*, 461 F.3 584, 595 (5th Cir. 2006)

The Plaintiff has not disclosed any identifiable waiver of Mississippi's sovereign immunity from liability with respect to section 1983 or the constitutional claims at issue, viz. First Amendment retaliation and due process claims, in federal court. Therefore, these claims must be dismissed against the State Defendants pursuant to the sovereign immunity doctrine. *Delaney*, 2013 WL 286365, at *3 (dismissing similar employment-related constitutional claims brought against the Mississippi Department of Public Safety by a former employee, including a First Amendment retaliation claim and substantive and procedural due process claims). Additionally, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. Therefore, these claims will be dismissed without prejudice for lack of jurisdiction under Rule 12(b)(1). *See Patel*, 2017 WL 11697929, at *4 ("Plaintiffs' claims for damages against MDHS and Davis

---

(citing Miss. Code Ann. § 11-46-5(1)). However, later cases have noticed that the Fifth Circuit's holding referred to litigation in state court. "The question before the Fifth Circuit . . . was whether Mississippi had waived its sovereign immunity with respect to § 1983 actions in state court. . .. The Fifth Circuit did not, however, find that waiver extended to Eleventh Amendment immunity for federal court actions." *Williams v. Miss. Dept. of Public Safety*, No. 1:17CV179-GHD-DAS, 2018 WL 1128133, at *5 (N.D. Miss. Mar. 1, 2018); *Meredith v. Jackson State Univ.*, No. 3:09CV303-DPJ-FKB, 2010 WL 606402, at *2 (S.D. Miss. Feb. 17, 2010); *Beacham v. City of Brookhaven, Miss.*, No. 5:22CV65-DCB-LGI, 2023 WL 4918346, at *4 (S.D. Miss. Aug. 1, 2023) (noting recently the complexity of this area of law and quoting the above nuance). The Fifth Circuit has given credence to this conclusion. *See Corn v. Miss. Dept. of Pub. Safety*, 954 F.3d 268, 274 (5th Cir. 2020) ("[T]he State of Mississippi explicitly preserved its sovereign immunity as to federal litigation when it promulgated the MTCA.") (citing, *inter alia*, *Sherwinski v. Peterson*, 98 F.3d 849, 851-52 (5th Cir. 1996) ("A state does not waive Eleventh Amendment immunity in federal courts merely by waiving sovereign immunity in its own courts.")). Therefore, the Court concludes that the MTCA does not waive the state's sovereign immunity from liability in federal court.

for deprivation of constitutional rights are barred by Eleventh Amendment immunity and will be dismissed without prejudice for lack of jurisdiction under Rule 12(b)(1).").

### B.   Individual Defendants in their personal capacities

The Individual Defendants, sued in their personal capacities, move to dismiss the section 1983 constitutional claims under the doctrine of qualified immunity. The defense of qualified immunity may be raised by a Motion for Judgment on the Pleadings under Rule 12(c).  *See Porter v. Valdez*, 424 F. App'x 382, 386 (5th Cir. 2011); *see also Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020).  Therefore, given that "there is . . . no discovery or evidence on which to base the two prong-analysis" required by the doctrine, "the analysis for either prong must be limited to the facts alleged in the complaint and the Rule 7 reply."  *Porter*, 424 F. App'x at 386.

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal."  *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011).  A government official is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions."  *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002). If an official's conduct was objectively reasonable, it does not matter if that official's conduct violated a constitutional right; he is still entitled to qualified immunity. *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996).

"When a defendant asserts qualified immunity, the plaintiff bears the burden of pleading facts that demonstrate liability and defeat immunity.  The plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Shaw v. Villanueva*, 918 F.3d 414, 416-17 (5th Cir. 2019) (quoting *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013)).  Courts have discretion to determine which of these questions to address first.  *Pearson*, 555 U.S. at 236.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.

Three federal constitutional claims have been alleged against the Individual Defendants—a First Amendment retaliation claim, a procedural due process claim, and a substantive due process claim.  (*See* Compl. ¶¶ XXVI-XXVII, ECF No. 1-1; *see also* Compl. ¶¶ XXXII-XXXIII, ECF No. 1-1, 3:22CV213-LG-RPM).  "Because the First Amendment provides an adequate source of constitutional protection in this case, there is no reason for this Court to address a general substantive due process claim." *Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437, 444 (5th Cir. 2001); *see also Omar v. Casterline*, 288 F. Supp. 2d 775, 781 (W.D. La. 2003) ("[W]e will not consider this claim under the Fourteenth Amendment since the First Amendment adequately addresses the issue.").  Therefore, the Court will disregard the substantive due process claim as an unnecessary "fallback" claim and will only consider Plaintiff's First Amendment and procedural due process claims.

To succeed on a First Amendment retaliation claim, "[a] plaintiff must show that '(1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighs the employer's interest in promoting efficiency in the workplace; and (4) his speech motivated the employer's adverse employment action.'" *Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016) (quoting *Charles v. Grief*, 522 F.3d 508, 510 n. 2 (5th Cir. 2008)).  In resolution of the issue, the Court takes particular interest in the first and third elements.

The first element regards whether Plaintiff "spoke as a citizen on a matter of public concern," which itself involves whether "he spoke as a citizen or employee." *Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016).  The distinction lies between "speech that is 'the kind of activity engaged in by citizens who do not work for the government,' . . . and activities undertaken in the course of performing one's job." *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007).  The latter is not protected by the First Amendment.  As the Supreme Court said in *Garcetti v. Ceballos*, "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti*, 547 U.S. 410, 417 (2006) (citing various cases).

However, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.  The Court further said, "[r]estricting speech that owes its

existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.  It simply reflects the exercise of employer control over what the employer itself has commissioned or created."  *Id.* at 421-22; *see also Lane v. Franks*, 573 U.S. 228, 237 (2014) (reiterating these principles).

"The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."  *Id.* at 241.  "Speech related to an employee's job duties that is directed within the employee's chain of command is not protected."  *Davis v. McKinney*, 518 F.3d 304, 315 (5th Cir. 2008); *see also id.* at 313 n. 3 ("[T]he caselaw is unanimous in holding that employee's communications that relate to his own job function up the chain of command, at least within his own department or division, fall within his official duties and are not entitled to First Amendment protection."); *Rushing v. Miss. Dept. of Child Prot. Servs.*, No. 20-60105, 2022 WL 873835, at *3 (5th Cir. Mar. 24, 2022) ("Our cases holding employee speech to be unprotected often involve complaints up the chain-of-command and not arguments between peers."); *Gibson*, 773 F.3d at 670 ("In making that inquiry, one of the factors we have considered is whether the employee's complaint was made within the chain of command or to an outside actor, such as a different government agency or the media."); *Rodriguez v. City of Corpus Christi*, 687 F. App'x 386, 390 (5th Cir. 2017) ("Rodriguez's raising of concerns about an incident that she witnessed at work with her employer's human resources department, rather than to the public, represents a

chain-of-command complaint that it is ordinarily within the scope of every public employee's duty."). Moreover, speech "made possible only because of information that [the plaintiff] learned on the job" may be unprotected. *Rushing*, 2022 WL 873835, at *3; *see also Harrison v. Lilly*, 854 F. App'x 554, 557 (5th Cir. 2021) (noting that the plaintiff's "communications were further premised on 'special knowledge' gleaned from her position").

Thus, in *Garcetti* a deputy district attorney who penned a memorandum to his superiors alleging governmental misconduct in its handling of a criminal case was not entitled to First Amendment protection, because he "spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case." *Garcetti*, 547 U.S. at 421. The Fifth Circuit characterized the *Garcetti* memo as "made for the benefit of the employer," which "was, in essence, the employer's speech, not the employee's own." *Anderson v. Valdez*, 845 F.3d at 596. "There was no question in *Garcetti* that the plaintiff in that case wrote the disposition memo pursuant to his employment duties. . .. Ceballos was required as part of his job as a prosecutor to write memos such as the one in question to assess the validity of searches and make recommendations related to the exercise of prosecutorial discretion." *Davis*, 518 F.3d at 311. Applying *Garcetti*, the Fifth Circuit found that a high school athletic director's internal memorandum to his superiors was unprotected, because it "focus[ed] on his daily operations" involving budgetary concerns, even though it was not specifically "demanded of him" that he prepare the report, and because it was written with the knowledge of someone in

-17-

his position, rather than as a "taxpayer" generically.  *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007); *see also Benes v. Puckett*, 602 F. App'x 589, 594 (5th Cir. 2015) (finding that a city engineer authored an email in his professional capacity where it related directly to his responsibilities over an engineering project and was sent internally to his supervisors, even though it was not demanded of him); *Escamilla v. Elliott*, 816 F. App'x 919, 926 (5th Cir. 2020) ("Although [the plaintiff]'s job did not necessarily demand that she make such complaints, the subject of the statements bore on her . . . ability to carry out the duties that her job did require . . .").

Here, while the Court credits Plaintiff's assertion that his speech potentially addresses matters of public concern, it is not so clear that he spoke as a citizen and not an employee.  A few comparisons can be made to the foregoing case law. Plaintiff alleges that his job duties included "litigation in administrative and judicial courts involving . . . subpoenas." (Compl. ¶ VIII, ECF No. 1-1; *see also* Compl. ¶ XIII, ECF No. 1-1, 3:22CV213-LG-RPM).  He "sent an email to May and Caldwell sharing his research, expressing concerns that MDOR was acting in an unlawful manner" with respect to its management of subpoenas (*Id.* ¶ XII), resembling *Garcetti*, 547 U.S. at 421.  The email concerns the validity of MDOR's subpoena disclosure habits—about which he learned through his employment—and relates entirely and explicitly to his job duty to answer subpoenas.  It shares his professional legal judgments concerning statutory and jurisprudential

interpretations—which are by no means *clearly* correct[3]—and which are presumably written with the insight and knowledge of an MDOR attorney, not a citizen, for the benefit of MDOR.  Although there is no indication that Plaintiff was *required* to author the memorandum, it bore on his ability to carry out his subpoena answering responsibilities.  And, finally, Plaintiff reported his concerns internally, up the "chain of command" to his supervisors and co-attorneys, Defendants May, Caldwell, and Thomas.[4]  (Compl. ¶ XII-XIII, ECF No. 1-1; *see also* Compl. ¶¶ XVI-XVII, ECF No. 1-1, 3:22CV213-LG-RPM).

These various observations lead to the conclusion that Plaintiff's speech resembles those found to be unprotected in previous cases.  At the very least, the Court cannot say that the law was certain to the effect that the Individual Defendants acted objectively unreasonably and violated Plaintiff's clearly established First Amendment rights.  Therefore, the Court dismisses the Individual Defendants based on qualified immunity and after finding that their acts were not objectively unreasonable considering the cited law.  *See Cooksey v. City of Gautier*,

---

[3] Plaintiff has filed a [50] Motion for Summary Judgment seeking vindication from the Court that his legal opinions were correct.  However, the Court declines to address that issue, which turns on the interpretation of Mississippi tax statutes, as they do not directly bear on the merits of the dispositive Motions.

[4] While it is alleged by Plaintiff that he also notified the third-party subpoena issuer of his legal opinions, the Court finds that this communication, too, was made pursuant to his professional duty to answer subpoenas.  *See Walker v. Smith*, 801 F. App'x 265, 272 (5th Cir. 2020) (finding unprotected speech to external parties where the plaintiff failed to demonstrate that speaking to the third party "was *not* an 'official duty'"); *Gibson*, 773 F.3d at 670 ("For when an employee's official duties include communicating with outside agencies or the press, it would be in dissonance with *Garcetti* to conclude that, when he does so, he enjoys First Amendment protection.").

No. 1:16CV448-HSO-JCG, 2018 WL 3977880, at *7-8 (S.D. Miss. Aug. 20, 2018)

(dismissing a police chief on qualified immunity grounds where a police officer

reported up the chain of command that city employees were behaving illegally, both

for lack of a violation and because "the Court is not persuaded that it would have

been objectively unreasonable for Chief Elbin to believe that Cooksey was making

his complaints within the scope of performing his official duties"); *Rogers v. Hall*, 46

F.4th 308, 314 (5th Cir. 2022) (finding that a prison employee's speech was not

"undisputedly outside the scope of his ordinary job responsibilities" and he thereby

"fail[ed] to show a violation of any 'right that was clearly established' at the time of

the challenged conduct") (citation omitted) (cleaned up).

  Further, the third element of a First Amendment retaliation claim balances

the need for workplace efficiency against the Plaintiff's free speech rights.

"Government employers, like private employes, need a significant degree of control

over their employees' words and actions; without it, there would be little chance for

the efficient provision of public services." *Garcetti*, 547 U.S. at 418-19 (citation

omitted).  "In determining whether a public employee's speech is protected by the

First Amendment," the Fifth Circuit "'strike[s] a balance between the interests of

employees commenting upon matters of public concern and the interest of the

government, as an employer, in promoting the efficiency of the public services it

performs through its employees.'" *McLin v. Twenty-First Jud. Dist.*, --- F. 4th ---,

2023 WL 5274403, at *6 (5th Cir. Aug. 16, 2023) (quoting *Graziosi v. City of

Greenville, Miss.*, 775 F.3d 731, 740 (5th Cir. 2015)) (cleaned up).  "In particular we

evaluate whether the speech has caused disruption, impeded performance, or

'affected working relationships necessary to the department's proper functioning.'"

*McLin*, 2023 WL 5274403, at *6 (quoting *Brawner v. City of Richardson, Tex.*, 855

F.2d 187, 192 (5th Cir. 1988)); *see also Boyd v. Miss. Dept. of Pub. Safety*, 751 F.

App'x 444, 450 (5th Cir. 2018) (considering "'whether the statement . . . impedes the

performance of the speaker's duties or interferes with the regular operation of the

enterprise'") (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)).   "'When close

working relationships are essential to fulfilling public responsibilities, a wide

degree of deference to the employer's judgment is appropriate.'"   *McLin*, 2023 WL

5274403, at *6 (quoting *Connick v. Myers*, 461 U.S. 138, 151-52 (1983)).

Here, as above, the Court finds the law somewhat uncertain.  The Fifth

Circuit has found that a Texas county's "interest in an efficient, harmonious work

environment in its attorney's office outweighs [two paralegals'] interests in their

speech." *Lumpkin v. Aransas Cty., Tex.*, 712 F. App'x 350, 359 (5th Cir. 2017).  The

Court noted that "'close working relationships'" are "specially held to be crucial in

public attorney's offices." *Id.* (quoting *Connick*, 461 U.S. at 151-52).  Therefore, in

view of the workplace in this case, some measure of deference to the employer is

appropriate.  *McLin*, 2023 WL 5274403, at *6; *Connick*, 461 U.S. at 151-52.  Again,

at the very least, the precarious balance between Plaintiff's interest in freely

speaking on the issue and the Defendants' interest in workplace unanimity is

"sufficiently uncertain so as to support [the defendant]'s defense of qualified

immunity." *McLin*, 2023 WL 5274403, at *6 (citation omitted).  Therefore, the

Individual Defendants are entitled to qualified immunity on the First Amendment claim on these additional grounds.

Next, Plaintiff brings a "procedural due process" claim arising from his discharge. "To state a § 1983 claim for violation of the Fourteenth Amendment right to due process, a plaintiff must allege that: '(1) he has a property interest in his employment sufficient to entitle him to due process protection, and (2) he was terminated without receiving the due process protections to which he was entitled.'" *Ristow v. Hansen*, 719 F. App'x 359, 364-65 (5th Cir. 2018) (quoting *McDonald v. City of Corinth, Tex.*, 102 F.3d 152, 155 (5th Cir. 1996)) (cleaned up). "Without such a property interest, 'no right to due process can accrue.'" *Nichols v. Univ. S. Miss.*, 669 F. Supp. 2d 684, 694 (S.D. Miss. 2009) (citing *Pruett v. Dumas*, 914 F. Supp. 133 (N.D. Miss. 1996)). However, "[a]t will employees have no constitutionally protected property interest in employment." *Stark v. Univ. S. Miss.*, 8 F. Supp. 3d 825, 839-40 (S.D. Miss. Mar. 25, 2014) (citing *Vance v. N. Panola Sch. Dist.*, 31 F. Supp. 2d 545, 548 (N.D. Miss. 1998), *aff'd*, 189 F.3d 470 (5th Cir. 1999)); *see also McNeill v. City of Canton, Miss.*, 291 F. App'x 670, 672 (5th Cir. 2008) (dismissing the procedural due process claim of a former employee where "she was an at-will employee and therefore terminable with or without cause"); *Ristow*, 719 F. App'x at 365 (dismissing the procedural due process claim of a former employee who failed to allege "that his employment was not at will").

Here, Plaintiff alleges that he "was employed as 'Non-State Service' employed at-will." (Compl. ¶ VIII, ECF No. 1-1). While it appears to the Court that the

procedural due process claim thereby fails as a matter of law, it must find, at the very least, that the law was not clear whether Plaintiff enjoyed a property interest in continued employment.  Therefore, qualified immunity attaches to this claim as well.  For these reasons, the federal claims are dismissed against the Individual Defendants.

## III.    State Law Claims

The resolution of the federal claims leaves only Plaintiff's state law claims pending.  Under 28 U.S.C. § 1367(c), "district courts may decline to exercise supplemental jurisdiction over a claim . . . if. . . (3) the district court has dismissed all claims over which it has original jurisdiction."  "District courts are afforded 'wide latitude' in their disposition of state law claims" under the statute.  *Spell v. Edwards*, No. 22-30075, 2023 WL 2110889, at *2 (5th Cir. Feb. 17, 2023).  The "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."  *Parker & Parsley Petrol. Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)); *see also Spell*, 2023 WL 2110889, at *2 (repeating that "'the general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial'") (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)).  The Court sees no reason to depart here from this well-established practice, as this case remains in a relatively early stage of litigation.

"In sum, the Court has dismissed the only claim[s] over which it had original jurisdiction and finds that, on balance, the factors of judicial economy, convenience, fairness, and comity weigh in favor of declining supplemental jurisdiction." *See Wilson v. Ly Investments, LLC*, No. 1:20CV300-HSO-RHWR, 2022 WL 493669, at *8 (S.D. Miss. Feb. 17, 2022) (citation omitted).  The Court therefore dismisses these state law claims without prejudice.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [57] Motion to Dismiss Certain Claims on Immunity Grounds and Motion for Partial Judgment on the Pleadings filed by Defendants, Ashley Merryman May, Mississippi Department of Revenue, State of Mississippi, Bridgette Thomas, and Lamar Wilson is **GRANTED IN PART**.  The federal causes of action are **DISMISSED WITHOUT PREJUDICE** under Rules 12(b)(1) and (c) of the Federal Rules of Civil Procedure on immunity grounds.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [60] Motion to Dismiss Certain Claims on Immunity Grounds and Motion for Partial Judgment on the Pleadings filed by Defendants, Meg Bartlett, David Caldwell, Jan Craig, and Christopher Graham, is **GRANTED IN PART**.  The federal causes of action are **DISMISSED WITHOUT PREJUDICE** under Rules 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure on immunity grounds.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Court declines supplemental jurisdiction over the remaining state law claims.  These claims are **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. § 1367(c).

**SO ORDERED AND ADJUDGED** this the 27th day of September, 2023.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE